## CHAPMAN et ux. v. ST. LOUIS & S. W. RY. CO. et al.

### Civ. No. 2435.

District Court, N. D. Texas, Dallas Division.

May 3, 1947.

Henry Klepak and Mike McCool, both of Dallas, Tex., for plaintiffs.

Hamilton, Dyer & Shults, of Dallas, Tex., for defendants.

ATWELL, District Judge.

The motion to dismiss, and which was sustained on April 29th, shows that the defendant railway is a Texas corporation, and that it is in the hands of a receiver or trustee in a re-organization proceeding pending in Missouri. The road is being operated by such trustee. The plaintiffs appear, also, to be residents of Texas. The trustee was served under nonresident citation.

The plaintiff, after the sustaining of the motion to dismiss, asked leave to amend, which the court granted.

The interesting question that is now for determination has two branches, (a) Does diversity jurisdiction touch? (b) If it does, may the suit be instituted in Texas when the trustee is a resident of St. Louis?

The court is not advised as to the provisions of the re-organization order, but I suspect that the court gave the trustee the right to sue and be sued. It would be unthinkable that a trustee could run a railroad through the states of Missouri, Arkansas and Texas with all of the liabilities that usually arise against such transportation company and require those who might have such rights of action to go to Missouri to bring suit.

The Federal Rules of Civil Procedure, rule 17, 28 U.S.C.A. following section 723c, provide that the real party in interest is the one that shall brand the party to a suit, "but an executor * * * trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the suit is brought." See also Mecom v. Fitzsimmons, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, 77 A.L.R. 904.

In addition to that, the statute of Texas provides that when a line of railroad is operated by a receiver wholly within this state, all money that comes into the hands of the receiver shall be kept and deposited within this state until the property is distributed. If any portion of the road lies in another state, the receiver shall be required to deposit in this state at least such share of the funds in his hands as is proportioned to the value of the property of the county within this state.

Art. 2310, Civil Statutes of Texas, provides that when the property within the limits of this state has been placed in the hands of a receiver who has taken charge of such property, such receiver may, in his official capacity, sue or be sued in any court of this state having jurisdiction of the cause of action without leave of the court appointing him.

Art. 2311 provides that actions may be brought against a receiver of property where said person resides, and against the receiver of a corporation in a county where the principal office of said corporation may be located, and against receivers of railroad companies in any county, through or into which the road is constructed. Service of summons may be had upon the receiver, or, upon the general or division superintendent of the road, or, upon any agent of said receiver who resides in the county where the suit is brought.

Art. 2312, Vernon's Ann.Civ.St. art. 2312, provides that property within this state shall be received by a receiver who lives in the particular county where the property is situated.

Rule 17, Federal Civil Procedure, heretofore quoted, shows that the "real party in interest" is the one that shall brand a party to a suit, but a trustee may sue in his own name without joining with him the party for whose benefit the suit is brought.

■ The plaintiffs enter this court. They do not come after having instituted their proceeding in the county in which the alleged accident happened. They are citizens of Texas. The real party at interest is a citizen of Texas. The trustee is a citizen of Missouri. The plaintiffs rely upon the citizenship of the trustee to furnish diversity jurisdiction. The running of a railroad in Texas by a trustee must be under the authority of, and responsive to, the statute of Texas relating to such activity. Therefore, the citizenship of the trustee may be disregarded since, if it is not, the statute of Texas with reference to the venue for the filing of a suit against the railroad that it may be brought in the county in which the act causing the suit took place, would be disregarded. To hold otherwise would subject a plaintiff-litigant to unseemly inconvenience in securing court action upon his claim, or, alleged right of action.

The Supreme Court, in Gillis, Receiver v. California, 293 U.S. 620, 55 S.Ct. 4, 79 L. Ed. 199, held that a receiver appointed in an United States court, for a corporation, is under a duty to comply with the state law regarding that particular business. He is also subject to state laws as to taxes.

Sec. 65 of the Judicial Code, Title 28 U. S.C.A. § 124, is quoted in the Gillis case, supra, and shows "a receiver or manager in possession of any property, * * * shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same maner that the owner or possessor thereof would be bound to do if in possession thereof." In truth, it is made a federal offense for any receiver, or, manager, not to do so, and for such failure, he would be subject to a fine or imprisonment, both of which are fixed in the statute.

■ The public policy of a state also controls. Steele v. Drummond, 275 U.S. 199, 48 S.Ct. 53, 72 L.Ed. 238.

In line with the statute of Texas which requires the receipts of a railroad operating in Texas to be held in Texas until the claims, etc., against that road, originating in Texas, are settled, is the federal equity procedure which requires of an ancillary receiver, appointed by the federal court, in the district other than that in which the original receiver was appointed, the same conservation of funds, that is, the detention of funds, until the liabilities of that particular ancillary jurisdiction are settled, and the remainder, if any, is turned over to the court of original jurisdiction. So, the rule seems to be, which is also supported by public policy, that the residence of the original trustee is not very significant, in so far as claims against the road which is being operated are concerned.

Therefore, we have two very well marked authorizations, that would seem to make the real party at interest here, to-wit, the railroad company, the determinative party as to jurisdiction and venue. The immateriality of the residence of the trustee and the funds and corpus of the real property, and the location of the occurrence, being fixed in Hunt County, Texas, in which county the plaintiffs also reside, this court has no jurisdiction and the cause must be dismissed. That seems the appropriate course to take, otherwise these specially marked exceptions to the jurisdiction of the national court over receivers, or, trustees of a railroad being operated in Texas by such receiver or trustee, would be ineffective and inoperative, when the reading of them, and the understanding of the reason for their existence shows their importance, both with reference to funds, venue of suits against the railroad, and the ease with which the railroad is made responsible to the damaged party.

The trouble with this position, is, that the plaintiff alleges that the operation of the defendant railroad was in the hands of the trustee, and that he hired and otherwise supervised his agents and officers in such operation, and that while under his control and management they negligently caused the death of the plaintiff's son.

That pleads a tort. A tort created by the defendant trustee. That being the situation, and the trustee being a citizen of the state of Missouri, and the plaintiffs alleging diversity of citizenship as between them and him, can such a framed cause be ruled by the state statutes hereinbefore referred to?

During the Federal Control Act, 40 Stat. 451, at the time of and after the first World War, the trustee could have been reached by serving one of his agents in Hunt County, Texas, in the manner provided by the state statute for such service. The same Control Act prevented the removal of such a suit from the state to the federal court. The Control Act has been repealed. Some of the statutes mentioned above which were in existence during the applicability of the Control Act are still operative. The plaintiffs, under the statutes of Texas, quoted above, could have sued the trustee in the state court of Hunt County and gotten service in the manner just mentioned. The trustee, being a nonresident, and giving complexion to the suit, though it be for tort, also renders it a suit between citizens of different states, and the plaintiffs have a right to choose the forum, that is, either a state court in Hunt County, or, the federal court for the district and division in which Hunt County is situated. That is what they have done.

The early cases of Chamberlain v. New York, C.C.Ohio, 71 F. 636, and Smith v. Babcock, D.C., 260 F. 679, support this position. Smith v. Babcock was decided in 1919, and Hines being the Federal Director General of Railroads, was a citizen of a state other than Ohio, which was the state in which the railroad was being operated, and the railroad was a citizen of that state. The court pointed out that Hines not being a resident of Ohio could not be served with a process, but the railroad in Ohio that was being operated under Hines' order, was amenable to the Ohio statute and service can be had upon any regular ticket agent, or, freight agent, or, upon the conductor in charge of the train. It was also argued in that case that the suit was essentially one against the United States, and that the United States is not a citizen of any state; therefore, diversity jurisdiction does not exist.

The court finally reached the position that the Control Act makes all railroads,

while in federal control, subject to all the laws and liabilities as common carriers, whether arising under state or federal law. Hence, the Director General of Railroads is liable for injury to a third person precisely to the same extent as if such railroad were not under federal control. And, finally, that the Control Act did not interfere with the rights and remedies that the citizen had when the railroad was not so controlled. And that this right extends to the bringing of the parties into court as well as to the jurisdiction of the court. Compensation for the alleged tort, if the plaintiffs are successful, will be made through the court appointing the trustee and in a manner in line with the re-organization in bankruptcy statute.

This would still allow the determination of the amount, the accessibility of a court to the injured party, the preservation of the funds, and the proportion to be paid on such claim and the time of payment, in the hands of the court, out of which came the order appointing the trustee.

A dismissal without prejudice is allowed.