John W. HERRICK, a Texas Citizen, Co-Administrator, et al., Plaintiffs,

v.

PIONEER GAS PRODUCTS COMPANY, a Texas Corporation, Defendants.

No. CIV–75–0673–T.

United States District Court, W. D. Oklahoma.

March 8, 1976.

As Amended May 17, 1977.

John W. Norman, of Lampkin, Wolfe, Burger, McCaffrey & Norman, Oklahoma City, Okl., for plaintiffs.

Elliott C. Fenton, of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., Joe Harlan of Gibson, Ochsner, Adkins, Harlan & Hankins, Amarillo, Tex., for Pioneer Gas Products Co. and Pioneer Natural Gas Co., defendants.

## ORDER OF REMAND

RALPH G. THOMPSON, District Judge.

Loren Scott Miller was killed on August 8, 1973, when an oxygen bottle exploded at the Mooreland Compressor and Pipeline Station of Cities Service Gas Company about six miles north of Mooreland, Oklahoma. The District Court in Woodward County appointed Loren's surviving wife, Idabelle Miller, administratrix of his estate on August 23, 1973. Acting in her capacity as administratrix, she brought suit against Union Carbide Corporation and others in District Court of Oklahoma County, Oklahoma, case number CJ–74–3380. Idabelle received permission to settle that case on May 29, 1975.

On July 3, 1975, Idabelle made application to the probate court representing:

1. That your applicant is the Administratrix of the estate of Loren Scott Miller, deceased, and is the surviving wife of Loren Scott Miller, deceased;

2. That as a result of the death of Loren Scott Miller, deceased, said estate and the survivors of Loren Scott Miller, deceased, have a cause of action against a Texas corporation;

3. That it is appropriate and desirable that a Texas citizen be appointed as Co-Administrator ad litem for the purposes of bringing said action against said Texas corporation;

4. That said appointment is sought for no other reason than to bring said litigation, and that the authority and powers of said Co-Administrator should be limited to whatever acts are necessary in the commencement, prosecution and conclusion of said cause of action.

WHEREFORE, your applicant respectfully requests that John W. Herrick, a Texas citizen, be appointed Co-Administrator ad litem of the estate of Loren Scott Miller, deceased.

The Court then appointed John W. Herrick co-administrator of the estate of Loren S. Miller. Whereupon, the present action was filed in the District Court of Oklahoma County, Oklahoma. Defendants Pioneer Gas Products Company and Pioneer Natural Gas Company removed to this court. Plaintiffs Herrick and Idabelle Miller assert that because Herrick is a citizen of Texas, as are the defendants, there is not complete diversity of citizenship pursuant to 28 U.S.C. § 1332 and therefore this Court lacks subject matter jurisdiction. Plaintiffs move to remand.

Defendants contend that Herrick was appointed for the express purpose of destroying diversity of citizenship. They argue that being non-resident defendants, this colorable action on the part of the plaintiffs, designed to destroy their right to remove to federal court, subjects them to the potentiality of local prejudice from which diversity of citizenship jurisdiction in federal courts was designed to protect. Defendants maintain that Herrick is in no sense a real party in interest. Under the statute Idabelle Miller will receive any recovery from the lawsuit, she is named administratrix and has the power to bring this lawsuit in her own right and Herrick's being named administrator *ad litem* makes him an unnecessary party to this action. With this position, the Court would like to agree.

It must first be made clear that when referring to the "real party in interest" in this order, this term is used in the jurisdictional sense and not for procedural purposes as in Rule 17(a) F.R.C.P. Rule 82 F.R.C.P. expressly declares that the Rules do not extend or limit the jurisdiction of the district courts—they are procedural only. *Lester v. McFaddon* 415 F.2d 1101 (4th Cir. 1969) at 1105, n. 10. *Bishop v. Hendricks*, 495 F.2d 289 (4th Cir. 1974) at 291, n. 4.

In 1931 the Supreme Court decided *Mecom v. Fitzsimmons Drilling Co., Inc.*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). There Smith's widow, who was appointed administratrix of his estate by an Oklahoma probate court, three times filed suit against a Louisiana corporation, three times the cause was removed to the appropriate federal district court and three times she dismissed without prejudice. The widow then resigned as administratrix and had Mecom, a Louisiana citizen, appointed as administrator. Mecom immediately appointed the widow his agent in Oklahoma. He then filed an action in state court and the defendant corporation removed to the United States District Court. Refusing Mecom's motion to remand, at the trial on the merits, the district court sustained a demurrer to the evidence and entered judgment for the defendant. The Supreme Court in holding that the case should have been remanded to state court stated, 284 U.S. at 189, 52 S.Ct. at 87,

His appointment was regular and in accordance with the statutes; and the decree of the probate court may not be collaterally attacked in the present proceeding. It is nevertheless insisted that if the petitioner's appointment was accomplished for the purpose of avoiding diversity of citizenship and consequent removal into the United States court, the parties to that proceeding,—the petitioner, the widow, and her attorney,—were in a conspiracy to defeat federal jurisdiction.

But it is clear that the motive or purpose that actuated any or all of these parties in procuring a lawful and valid

appointment is immaterial upon the question of identity or diversity of citizenship. To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud. upon it. [Citations omitted.]

Following *Mecom*, and *Black and White Taxicab v. Brown and Yellow Taxicab and Transfer Co.*, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928) the federal courts for many years overlooked assignments, transfers and appointments which served to collusively or improperly confer or deny diversity jurisdiction upon federal district courts. In *McSparran v. Weist*, 402 F.2d 867 (3rd Cir. 1968) the Court stated:

"Manufactured" diversity jurisdiction is not a new phenomenon in this circuit. In *Jaffe v. Philadelphia and Western Co.*, 180 F.2d 1010 (3 Cir. 1950). Our first case on the subject, we sustained a diversity action under the wrongful death and survival statutes of Pennsylvania although the New Jersey plaintiff who was appointed as administratrix ad prosequendum was a stenographer employed in the office of the widow's attorney. . .

In *Corabi v. Auto Racing, Inc.*, 264 F.2d 784, 75 A.L.R.2d 711 (3 Cir. 1959), the mother of a deceased minor resigned as administratrix of his estate to permit the appointment of a non-resident so that suit could be brought in the federal court. In a unanimous decision by the court en banc we held in an opinion by Chief Judge Briggs that the nonresident administrator d. b. n. had capacity to sue and that his citizenship rather than that of the beneficiaries of the decedent's estate was determinative of the diversity jurisdiction.

In 1948 Congress enacted what became 28 U.S.C. § 1359. The statute provides:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

This section, however, had little effect as a result of the reading the courts gave to the *Mecom* and *Black and White Taxicab* cases. The courts held that § 1359 did not bar an action unless there was collusion between the plaintiff and defendant in fraud of the courts. An action was not "improperly" brought if there was no impropriety or irregularity involved in the state court proceeding for the appointment of the out-of-state fiduciary. *Corabi v. Auto Racing, Inc.*, 264 F.2d 784 (3rd Cir. 1959). *Corabi* became the leading case supporting the maintenance of "manufactured" diversity jurisdiction. See *Lang v. Elm City Construction Co.*, 217 F.Supp. 873 (D.Conn.1963) affirmed per curiam 324 F.2d 235 (2nd Cir. 1963); *Stephan v. Marlin Firearms Co.*, 325 F.2d 238 (2nd Cir. 1963); *Janzen v. Goos*, 302 F.2d 421 (8th Cir. 1962); *Bradbury v. Dennis*, 310 F.2d 73 (10th Cir. 1962); and *Todd County, Minn. v. Loegering*, 297 F.2d 470 (8th Cir. 1961).

Colorable transfers and assignments to persons who were no more than "straw persons" to create diversity were equally a problem until *Caribbean Mills, Inc. v. Kramer*, 392 F.2d 387 (5th Cir. 1968). There, Clayton Kramer, a Texas attorney, for one dollar, became the assignee of the Panama and Venezuela Finance Company, a Panamanian corporation, of rights it held against Caribbean Mills, Inc., a Haitian corporation, under a contract for the sale of stock. Kramer then filed suit in United States District Court for the Northern District of Texas to recover $165,000 owed under the contract. Under a separate agreement, Kramer had a right to pay his attorney 33⅓% of any recovery, retain 5% of the remainder and return 95% to Panama as a "bonus". After the trial court overruled Caribbean's objection to jurisdiction, a jury returned a verdict for $165,000 and judgment was entered thereon. On appeal the Fifth Circuit reversed and remanded with direction to dismiss for want of subject matter jurisdiction. The Court, in criticizing *Corabi* stated:

Were it not for the court's discussion of the meaning of Section 1359, we would not dwell on the *Corabi* case but would simply distinguish it as involving an appointment immune from collateral attack. The problem is that the court defined "improper or collusive" so that the statute would have very narrow application, if any application at all:

[Quotation omitted]

By focusing on the literal meanings of the two words, the court virtually emasculated the statute; for it is doubtful that any of the cases under consideration reflect collusion in the sense of fraud or deceit, collusion with the opposing party, or impropriety in the sense of indecorum or indecency. Indeed, when litigants can achieve diversity by such simple devices as assignment to a nonresident collection agent or appointment of a nonresident administrator, it is hard to imagine why they would ever resort to fraud or deceit, actual impropriety, or collusion with the other side. If the statute is to have any utility, its meaning must be derived from the pre-revision statutes and cases, not from dictionary definitions of the individual words. In the context of Section 1359 and its predecessor statutes, the phrase "improperly or collusively" means what the courts have said it means. Hence, an attempt to create federal jurisdiction by colorable assignment or other device without substance is "improper or collusive" within the meaning of the statute.

The Supreme Court in *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969) affirmed the decision of the Court of Appeals for the Fifth Circuit. The Court stated at page 829, 89 S.Ct. at page 1490,

Kramer nevertheless argues that the assignment to him was not "improperly or collusively made" within the meaning of § 1359, for two main reasons. First, he suggests that the undisputed legality of the assignment under Texas law necessarily rendered it valid for purposes of federal jurisdiction. We cannot accept this contention. The existence of federal jurisdiction is a matter of federal, not state law. . . .

.     .     .     .     .

In short, we find that this assignment falls not only within the scope of § 1359 but within its very core. It follows that the district court lacked jurisdiction to hear this action, and that petitioner must seek his remedy in the state courts.

The Supreme Court, in a footnote, reserved the question of "improper" or "collusive" appointment of administrators. 394 U.S. 828 n. 9, 89 S.Ct. 1490 n. 9.

Nor is it necessary to consider whether, in cases in which suit is required to be brought by an administrator or guardian, a motive to create diversity jurisdiction renders the appointment of an out-of-state representative "improper" or "collusive." See, e. g., *McSparran v. Weist,* 402 F.2d 867 (3 Cir., 1968); *Lang v. Elm City Constr. Co.,* 324 F.2d 235 (2 Cir., 1963); *County of Todd v. Loegering,* 297 F.2d 470 (8 Cir., 1961); cf. *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). Cases involving representatives vary in several respects from those in which jurisdiction is based on assignments: (1) in the former situation, some representative must be appointed before suit can be brought, while in the latter the assignor normally is himself capable of suing in state court; (2) under state law, different kinds of guardians and administrators may possess discrete sorts of powers; and (3) all such representatives owe their appointment to the decree of a state court, rather than solely to an action of the parties. It is not necessary to decide whether these distinctions amount to a difference for purposes of § 1359.

After the decision of the Supreme Court in *Kramer v. Caribbean Mills, Inc.,* and after a petition for certiorari in *McSparran* was denied [*Fritzinger v. Weist,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969)] the Fourth Circuit decided *Lester v. McFaddon,* 415 F.2d 1101 (4th Cir., 1969). In that case, through Chief Judge Haynsworth, the Court rejected an attempt to

create federal diversity jurisdiction through the appointment of an out-of-state administrator. However, in that case the Court observed at page 1104,

In *Mecom,* the Court held there was no diversity jurisdiction in an action for wrongful death when, for the purpose of defeating federal jurisdiction the action was brought by an administrator having the same citizenship as the defendant. Section 1359, of course, does not apply to the *Mecom* situation since it attempts only to limit federal jurisdiction and not to protect it.

The only case that this Court has found which deviates from the required result in *Mecom* is the case of *Miller v. Perry,* 456 F.2d 63 (4th Cir. 1972). However, in that case the Court was construing a North Carolina statute which required the appointment of a resident administrator to bring an action under the North Carolina Wrongful Death Act. The Court was faced with the choice of holding the North Carolina statute unconstitutional under the Supremacy Clause or disregarding the citizenship of the administrator. The Court observed at page 67,

We are obligated to read *Kramer* as injecting a new note of realism into the determination of diversity jurisdiction. Diversity jurisdiction exists for the protection of the noncitizen who is obliged to sue or to be sued in the state of his adversary. It is for that reason that the device of appointing an out-of-state representative has been condemned. It is for that reason that state statutes or decisions that require a noncitizen to appoint an in-state representative should not have the effect of depriving the noncitizen of the federal forum that Congress has provided him.

In every real sense, this is a diversity case. Had the young Floridian survived, he clearly could have held the North Carolina defendants accountable in a federal court. Since his beneficiaries are Floridians, the controversy is no less interstate after his death than before.

If Loren Miller had survived, this case as well would clearly be an interstate conflict and it is realistically no less so as a result of his death.

The defendants maintain that because Herrick is only a co-administrator and Idabelle is also empowered to bring the action, this case is distinguishable from *Mecom* where there was only one person empowered to bring the suit. This distinction fails to reach the heart of the problem as it is clear that Idabelle could appear before the probate court and resign as administratrix as did the widow in *Mecom.*

The proposal of the American Law Institute would solve the problem that is faced here. A.L.I. Study of the Division of Jurisdiction between State and Federal Courts, Official Draft 1969, § 1301(b)(4). That section would attribute the citizenship of the decedent to the person representing his estate. However, until acted upon by Congress, it remains only a proposal.

This case is one of three lawsuits arising from the same explosion. The other two cases are also before this Court. The policy in favor of judicial economy and the avoidance of multiplicity of litigation would encourage a retention of this lawsuit. However, the facts in *Mecom* being so close to those here involved, it would not be in the interest of judicial economy for this Court to proceed through a trial of the matter only to discover thereafter that the result is a nullity and that the case at that point must be remanded to the state courts.

■ For the reasons that *Mecom* stands criticized but not overruled, and that 28 U.S.C. § 1359 relates only to the improper creation, not the destruction, of federal diversity jurisdiction, this Court feels bound to remand this case. It is therefore ordered this 8th day of March, 1976, that this case is remanded to the state court from which it was removed.